(41 South. 363.)

No. 15,894.

STATE ex rel. TURNER v. BLANCHARD, Governor, et al.

(June 4, 1906.)

PUBLIC LANDS — STATE LANDS — PUBLIC LEVEE.

An embankment built out in a lake, with earth from the bottom of the lake, to serve as a public levee, and still serving as such, is not subject to entry and sale as public land, though the bed of the lake belong to the state.

(Syllabus by the Court.)

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; George Kent Favrot, Judge.

Application by the state, on the relation of W. G. Turner, for writ of mandamus. Newton C. Blanchard, Governor, and A. W. Crandall, register. From an order denying the writ, plaintiff appeals. Affirmed.

Wickliffe & Falls, for appellant. Walter Guion, Atty. Gen. (Lewis Guion, of counsel), for appellees Blanchard and another. Bernard McCloskey (Arthur McGuirk, of counsel), for appellee Orleans Levee Board, intervener. J. E. Le Blanc, Jr., and Laycock & Beale, for appellee John E. Salles, intervener.

PROVOSTY, J. Act No. 30 of 1871, p. 75, authorized a certain private corporation to dig canals and build levees, above and below the city of New Orleans from river to lake, and along the shore of the lake, for the drainage of the city and its protection from overflow. The scheme was that the earth taken from the canals should form a levee by being piled along the outer bank of the canal. The work was to be paid for by the city, at the rate of 50 cents per cubic yard. By special provision of the act, the board of administrators of the city was to locate the canals and levees and to "procure the title to the lands necessary for said works." Although the act provided that the works should be "within the corporate limits of the city," and although the corporate limit of the city along the lake was the shore of· the lake, the levee along the lake was located out in the lake, about 800 or 1,000 feet from shore; the water being very shallow. The enterprise seems to have fallen through, but not until there had been built that part of the levee along the lake from the New Basin canal to the upper limit of the city, and also that part along the upper limit of the city from the lake to within a few squares of the river. In this levee, built out in the lake, two gaps were left, for the purpose of drainage; one of 45 feet, at the starting point, or point of junction with the bank of the New Basin canal, and one of 25 to 30 feet, at the turn towards the river, or point of junction with the upper protection levee. As the result of leaving these two gaps open, the levee out in the lake answered to the description of an island—land surrounded by water. It was 2,200 feet long by 150 to 200 feet wide. The work was done in 1872. In the course of time this levee standing out in the lake came to be used as a pleasure resort by permission of the authorities of the city of New Orleans, and is known as "West End."

The Orleans levee district was created in 1890, with limits corresponding with those of the city of New Orleans. The commissioners of the district have completed the levee above the city and built a levee from river to lake below the city, and also along the lake from the New Basin canal to the lower limit of the city; this last levee being further inland—inside, not outside, of the shore of the lake. Thus, there being a levee also along the river, the city of New Orleans, east bank,

is circled by a levee whereof this levee in the lake forms a part. Owing to the two gaps in it and to the New Basin canal, which is, in a sense, another gap, since its upper bank overflows during storms, this levee in the lake is very far from perfect. But the evidence shows that, notwithstanding these gaps, and such as it is, it forms a component part of the levee system of the city; that it aids materially in the work of protection, because the filling up of the basin back of it through these narrow gaps takes time, and the high tide subsides before any injury can be done. That it is considered to be a part of the levee system is shown conclusively by the fact that, when a storm destroyed it partially some years ago, the levee board staked out another levee further inland to take its place, and would have built this other levee had not the damage done by the storm been repaired. The levee board, however, has never exercised any jurisdiction over it, as is shown by the fact that the permission to occupy it as a pleasure resort has been derived from the city and not from the levee board, and by the further fact that, not the levee board, but the city, attended to having it repaired when it was damaged by the storm.

Plaintiff has applied to the state land office to sell him this piece of levee, as public land subject to entry and sale, and, upon the refusal of the land office to do so, has brought this mandamus suit. He invokes Act No. 124 of 1902, p. 206, section 1 of which provides as follows:

"Be it enacted by the General Assembly of the state of Louisiana, that all islands, other than sea marsh islands, belonging to the state, as well as all other lands of the state, not the property of any levee district, nor within the limits of any levee district which were formerly the beds of lakes, or other bodies of water, whether navigable or unnavigable which are now, or may hereafter become dry in whole or in part by reason of the recession therefrom of the waters which formerly covered the same, be and the same are hereby declared to be open to entry and sale for account of the state for school purposes as hereinafter provided."

The learned counsel for plaintiff argues that the beds of lakes belong to the state, by right of eminent domain; that this levee was formerly a part of the bed of Lake Pontchartrain, and has never been alienated, and therefore belongs to the state, and forms part of the public lands of the state; that it is not situated within the limits of any levee district; and that therefore, whether as an island belonging to the state, or as land formerly the bed of a lake from which the water has receded, it is subject to entry and sale under the above statute.

But, manifestly, whether this levee belongs to the state or not, it is a public work, paid for by the city of New Orleans and serving the purpose of its construction, and does not fall within the category of lands to which this statute has reference, and is not subject to entry and sale as public land.

The levee board intervened in the suit, praying that plaintiff's demand be rejected, and that it (the levee board) be decreed to be entitled to the possession and control of this levee. The latter demand cannot be entertained, for the reason that it is, in reality, directed against the state or the city of New Orleans, and that the state cannot be sued without her permission, and the city of New Orleans is not a party to the suit.

Judgment affirmed.

NICHOLLS and LAND, JJ., take no part, not having heard the argument.